UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
at PIKEVILLE

CIVIL ACTION NO. 06-103-DLB

SANDRA J. SLONE                                                                                    PLAINTIFF

vs.                       **MEMORANDUM OPINION & ORDER**

MICHAEL J. ASTRUE, Commissioner
SOCIAL SECURITY ADMINISTRATION                            DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Sandra J. Slone filed an application for period of disability and disability insurance benefits (DIB) on September 9, 2003. (Tr. 54-56). Plaintiff alleges she became unable to work on May 1, 2000, due to osteoarthritis in the lumbar spine, scoliosis, arteriosclerosis, stent in the right coronary artery, depression and foreshortening of the right leg. (Tr. 39, 67, 74, 103). Her application was denied initially and on reconsideration. (Tr. 35-38, 42-44). At Plaintiff's request, an administrative hearing was conducted on April 7, 2005, by Administrative Law Judge (ALJ) John M. Lawrence. (Tr. 285-305). On May 27, 2005, the ALJ ruled that Plaintiff was not disabled and therefore not entitled to disability

benefits. (Tr. 14–22). This decision became the final decision of the Commissioner when the Appeals Council denied review on April 19, 2006. (Tr. 9-11).

On May 26, 2006, Plaintiff filed the instant action. The matter has culminated in cross motions for summary judgment, which are now ripe for adjudication.

## II.  DISCUSSION

### A.  Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security,* 336 F.3d

469, 474 (6th Cir. 2003); *Preslar v. Secretary of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability. (Tr. 22, 25). At Step 2, the ALJ found Plaintiff's status post angioplasty and stenting of the right coronary artery and low back pain to be severe within the meaning of the regulations. (Tr. 22, 26). At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4. (Tr. 22, 26).

At Step 4, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to perform medium work; that is, lifting up to 50 pounds occasionally and 25 pounds frequently, and should avoid temperature extremes. (Tr. 25, 26). Based upon this RFC, as well as the record evidence concerning Plaintiff's past relevant work as a licensed practical nurse (LPN) in a private doctor's office, the ALJ concluded at Step 4 that Plaintiff was able to perform this past relevant work despite her RFC. (Tr. 25, 26). Accordingly, the ALJ's sequential analysis concluded at Step 4, and Plaintiff was found not disabled under the Social Security Act. (Tr. 26).

**C.     Analysis**

Plaintiff's challenges on appeal are directed at two areas. She maintains the ALJ failed to adequately consider the medical evidence relating to her various physical and emotional maladies, resulting in a RFC that did not accurately represent her situation. She argues the ALJ was able to accomplish this by improperly ignoring the opinions of her treating physician, Dr. Grady Stumbo. Plaintiff submits that as a consequence of the RFC

being flawed, the ALJ's resulting conclusions about her ability to return to her prior employment are also flawed. She argues this error was compounded by the ALJ's conduct in acting as his own vocational expert, instead of presenting the issue of whether Plaintiff had transferable job skills to an actual vocational expert.

In conjunction with advancing her claim of disability, Plaintiff pointed out that she has a number of physical conditions. She suffered a fracture of her left hand and has undergone carpel tunnel release. She argues that these conditions would result in limitations with use of her hands as far as motion and grip strength. She has a heart condition with arteriosclerosis, and mitral valve prolapse. She underwent a stent procedure in 2002. These problems, she complains, cause chest pain and shortness of breath. She has a leg length discrepancy due to sclerosis in her spine, and has degenerative arthritis. She asserts that her spinal condition causes her significant pain. She further offers that the stress from all of these problems has caused long-standing depression, with memory and concentration problems. Plaintiff takes issue with the ALJ's review and assessment of these conditions, especially his findings concerning what restrictions and limitations are imposed due to her problems.

Central to the ALJ's assessment was the manner in which he processed the medical evidence and weight he gave to that evidence, in particular the evidence from Plaintiff's treating providers. Plaintiff focuses upon the opinion testimony of Dr. Grady Stumbo, who has been her treating physician since 1982.

Plaintiff correctly points out that a treating physician's opinion is given greater weight than that of examining or non-examining physicians. *Hall v. Bowen,* 837 F.2d 272, 276 (6th Cir. 1988)("the medical opinion of a treating physician must be accorded greater weight

than those of physicians employed by the government to defend a disability claim"). However, the opinion must be based on detailed clinical and diagnostic evidence. *Bogle v. Sullivan,* 998 F.2d 342, 347-48 (6th Cir. 1993); *Houston v. Sec'y of Health & Human Servs.,* 736 F.2d 365, 367 (6th Cir. 1984). Thus, the weight given a treating physician's opinion on the nature and severity of impairments depends on whether and to what extent it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d); *Harris v. Heckler,* 756 F.2d 431 (6th Cir. 1985). It is given controlling weight if based upon detailed clinical and diagnostic test evidence and there is no other contradictory, substantive evidence. *Varley v. Secretary,* 820 F.2d 777, 779-80 (6th Cir. 1987). And if given no weight, the ALJ must give good reasons in the decision for rejecting the opinion. *Wilson v. Comm'r of Social Security,* 378 F.3d 541 (6th Cir. 2004).

The ALJ's decision in this case reflects that he recognized the significance of having evidence from Plaintiff's long-term treating provider, but also carefully discussed and weighed that evidence pursuant to the governing standards. In his decision, he states:

> The claimant's attorney, Randy Slone, deposed the primary care physician, Grady Stumbo, M.D., also the claimant's previous employer, on March 30, 2005. Dr. Stumbo distinguished the claimant's work as an LPN in his office from that of an LPN in a hospital or nursing home. He pointed out the latter would require more lifting and bending "because here most of our patients are ambulatory." He identified the claimant's "most impressive problem" as the blockage she had in her right coronary artery that required insertion of a stent. He reported she had stress in her life due to her parents' death, a husband with health problems and her only child married and moving away which he treated with Wellbutrin from "time to time" and, more recently, he used Zoloft. Dr. Stumbo emphasized that even when Ms. Slone didn't feel well, she would function professionally "very well" and there is no indicated he ever considered mental health referral. In terms of her physical condition vis-a-vis, returning to her former job, he opined she could "probably" frequently lift ten pounds and "probably" shouldn't lift much over 20 pounds at any time but distinguished Ms. Slone's "real problem in nursing" as being on her feet. He thought that she could still do her job if problems with carpal

> tunnel were her only problem. [fn 4 - The claimant reports a 1990 history of carpal tunnel surgery and returned to work thereafter. She took only two weeks off.] Exhibit 15F.
>
> The treating physician's opinion is entitled to great weight if supported by sufficient clinical findings and if it is consistent with the record. Dr. Stumbo's progress notes reflect the claimant's subjective complaints while his objective findings are for the most part fairly routine, 2002 cardiac-related symptoms being an exception. Exhibit 17F. Exhibit 5F. Even so, cardiology treatment notes show she has done very well post July 2002 stenting including normal stress testing (see above). There is occasional back tenderness but notes show normal neurological examination including negative straight leg raising. Curiously, Dr. Stumbo referred the claimant for a CT scan of the lumbar spine scheduled for November 16, 2001 and also scheduled claimant for a bone density test but these are not of record. An earlier lumbar CT scan dated August 23, 1991 showed no abnormalities as did a CT scan of the bilateral hips that date. [fn 5 - See Exhibit 2F.] While these are well before the alleged onset date in 2000, they do compare to the normal lumbar x-rays taken during claimant's medical evaluation by Dr. Burns noted elsewhere in this decision. Still, one leg is an eighth inch shorter than the other affording a medical basis for back pain. However, this could be addressed with an orthopedic shoe which claimant admitted to Dr. Burns she had in the past. There is no reason given why this was abandoned. The undersigned also notes that Ms. Slone responded successfully to 2002 physical therapy for her back, all of which mitigate against her credibility. Nor has any of this significantly restrained her daily activities. She cooks, washes dishes, mops and vacuums, shops for groceries, drives (including a long trip of 400 miles), walks for exercise, and assists a husband with "significant" physical and mental issues. Exhibit 8E.

(Tr. 23-24). This excerpt reflects the ALJ's consideration of Dr. Stumbo's treatment and testimony and its placement in context of the overall evidentiary record. To the extent Dr. Stumbo opined Plaintiff is totally disabled from gainful employment requiring sitting or standing because she would have extreme problems sitting, standing, and walking, in any combination, for eight hours a day, forty hours a week, such is not an assessment of capacity or restrictions/limitations, but rather a conclusion that Plaintiff is disabled. An ALJ is not required to accept a treating physician's conclusory opinion on the ultimate issue of disability, see 20 C.F.R. § 404.1527(e)(1), since that determination is within the exclusive

province of the Commissioner. *Warner v. Comm'r of Social Security,* 375 F.3d 387, 391 (6th Cir. 2004).[1]

While the ALJ weighed Dr. Stumbo's opinions, the specific physical limitations assessed were not given controlling weight because they were not supported by his own records and were contradicted by other medical evidence. Though Plaintiff complained of degenerative back and joint pain while at work, Dr. Stumbo testified that she functioned very well. (Tr. 270). His treatment notes from 1999 through March 29, 2005, are part of the administrative record. These notes do not support a conclusion of functional disability due to degenerative problems. They contain no diagnosis of spinal degenerative arthritis, even though he testified that such was exhibited on x-rays taken several years earlier. His notes reflect only a possible diagnosis of spondylosis. (Tr. 156-81, 270). As pointed out by the Commissioner, there is little reference to back problems or pain in Dr. Stumbo's records until the entry on September 17, 2003, where knee pain is noted and that a lumbar spine CT scan shows moderate degenerative changes and possible spondylosis. (Tr. 156-81, 279-80). She was not seen again until almost a year and a half later, at which time Dr. Stumbo remarked "no pain, no fatigue." (Tr. 280). The only purported corroboration as to the nature and extent of the problems Plaintiff was experiencing is Dr. Stumbo's notation that Slone has had low back pain for years, is unable to stand for long periods and cannot lift over ten pounds. (Tr. 279). However, this notation is dated March 29, 2005, during

---

[1]Plaintiff suggests the acceptance of Dr. Stumbo's conclusion is bolstered by the fact that he himself served as a consultative disability examiner and as the Secretary of Kentucky's Human Resources Cabinet, SSI disability program. However, this prominent service, while exemplary, does not alter the standards governing acceptance and weight afforded treating and other medical opinion evidence.

Plaintiff's office visit with Dr. Stumbo one day prior to his deposition. Thus, this overall record of office visits, complaints, and medical diagnoses and treatment fails to support the opinions offered by Dr. Stumbo.

Moreover, the record contains other, contradicting medical opinion evidence that was also considered by the ALJ. (Tr. 22). Plaintiff was examined by orthopedic surgeon Dr. Mark Burns on November 22, 2003, at the request of the state agency. (Tr. 201-07). Based on his examination and clinical findings, no limitations were assessed since her physical and orthopedic exam was within normal limits. He noted normal range of back and joint motion, normal gait and station, normal motor strength, normal heel, toe, and tandem walking, and normal knee squat. Her low back x-rays were reported as normal, and she demonstrated no evidence of scoliosis on exam. Her leg length discrepancy was noted, for which Dr. Burns recommended physical therapy. (*Id.*).

Ultimately ALJ Lawrence assessed a physical RFC of medium level work. This was based upon his acceptance of the assessments by the state agency consultants. (Tr. 25, 223-31, 261-68). The consultants' assessments were offered after review of the medical evidence, including Dr. Burns' examination report and the treating physician evidence of Dr. Stumbo. Plaintiff's testimony as to her pain and problems was also reviewed and weighed by the ALJ in making this assessment. (Tr. 24). Her complaints of disabling pain were not supported by the activity level in which she actually engaged, nor minimal medical care and treatment being sought or medication being taken. (Tr. 24-25, 300-04). The inconsistencies between Dr. Stumbo's treatment record and his deposition testimony, the fact that the weight given his opinions was necessarily impacted by the contradicting medical evidence of Dr. Burns' report, the contradictory limitations by the state agency

physicians, and the subjective evidence offered by Plaintiff, all support the ALJ's RFC determination. The Court finds that the ALJ reviewed this evidence in accordance with the governing legal standards and his conclusions as to Plaintiff's limitations and restrictions due to her back and joint problems were supported by substantial evidence.

To the extent Plaintiff complains the ALJ did not adequately factor in her other physical conditions, this argument is unavailing. The ALJ noted that the medical evidence showed Slone obtained good results from her open reduction and internal fixation, making steady gains in strength and mobility until discharged from physical therapy with her treatment goals met. (Tr. 22). As for her carpal tunnel, the ALJ noted the evidence showed that she underwent this surgery in 1990, was off from work for two weeks, and then returned to her regular full-time employment as an LPN. (Tr. 24). Thus, the record supports the ALJ's conclusion that no specific limitations or restrictions be imposed because of these occurrences, aside from the extent to which their existence was considered in the overall physical capacity assessment.

And as for her arteriosclerosis, Plaintiff fails to provide evidence of limitations or restrictions due to her cardiac condition over and above those in the ALJ's RFC finding. She underwent cardiac catheterization and was successfully revascularized. (Tr. 134-35). Subsequent stress test was normal. (Tr. 150, 152). Plaintiff testified she has occasional chest pain and shortness of breath, but has not sought treatment for these complaints. Nor do these complaints interfere with her functional work abilities, as related by Dr. Stumbo. Thus, the ALJ's consideration of these additional problems in assessing Plaintiff's physical RFC is supported by the record as a whole, and Plaintiff has failed to come forth with evidence otherwise.

Plaintiff also takes issue with the ALJ's failure to find a severe mental impairment due to depression. But the record supports the ALJ's conclusions on this point. As pointed out by the Commissioner, although Plaintiff's treating physician remarked that she was depressed, he did not assess any mental limitations. Dr. Stumbo related that depression can cause poor sleep, which can lead to poor functioning due to fatigue. But he testified this was not the situation with Ms. Slone, who functioned very well professionally. (Tr. 271). This evidence, combined with the mental health consultative examination assessment findings of Dr. Stephen Lamb (tr. 195-200), supports the ALJ's conclusion that any mental impairment was less than severe. (Tr. 24-25) Plaintiffs offers no other medical evidence of particular restrictions or limitations that should have been imposed based upon her alleged mental impairment.

Accordingly, the Court finds that there is substantial evidence to support the RFC assessed by the ALJ. *See Richardson v. Perales,* 402 U.S. 389, 401 (1971) (judicial review of the Secretary's final decision is limited to determining whether the findings are supported by substantial evidence and whether the proper legal standards were employed in making those findings).

Because the Court concludes the ALJ's RFC assessment was properly supported, Plaintiff's remaining challenge on appeal is also without merit. Plaintiff contends the ALJ's finding that she could return to her prior employment was premised upon a faulty RFC assessment, which contention has now been rejected. To the extent Plaintiff further contends that the ALJ improperly acted as his own vocational expert in using this RFC and determining she could perform her past relevant work, this argument is misplaced. The work history form completed by Plaintiff describes her prior LPN work as being within

medium exertional limits – that she was required to lift twenty-five pounds frequently, stand and walk for seven and one-half hours, and sit for one-hour hour. (Tr. 87). Dr. Stumbo also testified about the requirements of the LPN work as performed by Plaintiff in his office. He said it differs from hospital or nursing home work because it does not involve as much lifting and bending because office patients are typically ambulatory, though it does require Plaintiff to be on her feet most of the workday. (Tr. 270).

Thus, the ALJ accurately determined that Slone's RFC for medium level work did not prevent her from returning to this past relevant work as performed by her. *Studaway v. Sec'y of Health & Human Servs.,* 815 F.2d 1074, 1076 (6th Cir. 1987) (requirements of job as actually performed or as it is performed in national economy may be looked to in determining if return to past relevant work is possible). This conclusion was within the realm of the ALJ's authority, without the need for expert vocational testimony. *Key v. Callahan,* 109 F.3d 270, 274 (6th Cir. 1997)("[i]n evaluating residual functional capacity, the Commissioner may but is not required to, use the services of a vocational expert"). Plaintiff argues the ALJ should have utilized a VE in order to determine whether she had transferable skills to other jobs because she likely would have been deemed disabled per the grid rules. But that consideration would be implicated only if Plaintiff had been unable to return to her past relevant work, with the ALJ thereby continuing his sequential analysis on to Step Five.

In conclusion, the ALJ's determination that Plaintiff could return to her past relevant work was supported by substantial evidence, based upon Plaintiff's RFC and the information contained in the record as to the requirements of private office LPN work as

performed by her.  Thus, there was no error in the ALJ concluding at Step Four that Plaintiff was not disabled for Social Security Disability Insurance Benefit purposes.

### III.  CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #4) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #5) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 28th day of September, 2007.



Signed By:
*David L. Bunning*  DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-06-103-Slone.MOO.wpd